IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JENNIFER ELIZABETH GARRETT         :            CIVIL ACTION
                                   :
              v.                   :
                                   :
CAROLYN W. COLVIN,                 :            NO. 14-6371
Acting Commissioner of Social Security    :

MEMORANDUM

Dalzell, J.                                           October 7, 2015

## I.    Introduction

We consider here Jennifer Garrett's objections to Magistrate Judge Hart's Report and

Recommendation regarding her Request for Review of the decision by the Acting Commissioner

of the Social Security Administration.  Judge Hart recommended that we deny Garrett's Request

for Review and grant judgment in favor of the Acting Commissioner and against the plaintiff.

For the reasons set forth below, we will overrule Garrett's objections, approve and adopt

Judge Hart's Report and Recommendation, and enter judgment in favor of the Acting

Commissioner and against Jennifer Garrett.

## II.    Standard of Review

When a party makes timely and specific objections to portions of a magistrate judge's

Report and Recommendation, the district court applies de novo review to the issues raised on

objection. See 28 U.S.C. §636(b)(1); see also United States v. Raddatz, 447 U.S. 667, 674-75

(1980).  But the district court may only review the ALJ's final decision to determine "whether

that decision is supported by substantial evidence," Hartranft v. Apfel, 181 F.3d 358, 360 (3d

Cir. 1999) (citing 42 U.S.C. §405(g)), which is to say the Court "is bound by the ALJ's findings

of fact if they are supported by substantial evidence in the record."  Plummer v. Apfel, 186 F.3d

422, 427 (3d Cir. 1999).  "Substantial evidence does not mean a large or considerable amount of

evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." Hartranft, 181 F.3d at 360 (internal citation and quotation marks omitted).

A district court may not "set the Commissioner's decision aside if it is supported by substantial

evidence, even if [the court] would have decided the factual inquiry differently," Id.   An ALJ's

decision must therefore present sufficient explanation of his or her final determination in order to

provide a reviewing court with the benefit of the factual basis underlying the ultimate disability

finding.  See Cotter v. Harris, 642 F.2d 700, 704-05 (3d Cir. 1981).  The decision need only

discuss the most pertinent and relevant evidence bearing upon a claimant's disability status, but it

must also provide sufficient discussion to allow the Court to determine whether any rejection of

potentially significant evidence was proper.  See Johnson v. Comm'r of Soc. Sec, 529 F.3d 198,

203-04 (3d Cir. 2008) (internal citation omitted).

As Garrett does not object to Judge Hart's recitation of the case's procedural background,

we present the case history as it appears in his Report and Recommendation.

### III.    Factual And Procedural Background

It is unnecessary to recount the lengthy medical history of plaintiff Jennifer Garrett, as

the ALJ's decision and the record provide ample descriptions of her condition.  We will recite

the relevant facts for our analysis during our discussion and will only focus here on the

procedural background for this case.

Garrett was born on October 4, 1974, and her educational background consists of

graduating from high school and completing one year of college, as well as separate training in

cardiovascular technology.  Report and Recommendation ("R&R") at 1.  Garrett obtained

disability benefits in 1997 as a result of a panic disorder, but her benefits were terminated in

2011 due to improvements in her condition. Id.  She filed for the disability insurance benefits at

issue here on February 11, 2013. Id.  In that application, Garrett alleged disability resulting from

depression and a panic disorder with agoraphobia. Id.  Garrett's application for benefits was

denied on May 15, 2013, after which she sought de novo review of the decision by an ALJ. Id.

at 2.  A hearing on her case was held five days later, and the ALJ denied relief in a written

decision dated June 25, 2013. Id.  Garrett requested review before the Appeals Council, but this

request was denied on October 2, 2014. Id.  She then commenced this action on November 6,

2014 by filing a complaint and we referred it to Judge Hart pursuant to an Order issued on June

17, 2015.  On July 20, 2015, Judge Hart issued his R&R, proposing that Garrett's Request for

Review should be denied and judgment granted in favor of the Acting Commissioner.  Garrett

timely filed these objections to Judge Hart's R&R on August 2, 2015.[1]

IV.    **Discussion**

Garrett avers that Judge Hart erred when he (1) allowed the Administrative Law Judge

("ALJ") to explain why he accepted without adequate explanation the opinions of non-treating

physicians over the opinion of the treating physician, (2) concluded that the ALJ's failure to

obtain records from Garrett's prior period of disability was excusable, (3) assumed that there is a

requirement for medical verification regarding lay testimony, and (4) found that the ALJ did not

err when he allegedly relied on Garrett's daily life activities to justify discounting the treating

physician's opinion. Obj. at 1-19.  We now consider Garrett's objections in turn.

---

[1] The Acting Commissioner's response to Garrett's objections was only three sentences long and
stated that "[t]he objections do not merit a substantive response."  See Def.'s Resp. at
unnumbered page 1.  While we ultimately find in favor of the Acting Commissioner, we do not
appreciate such arrogance as displayed by the defendant, as it is the responsibility of the SSA
and its counsel to ensure that the Court is fully briefed on the matters before it.

### A.     The ALJ's Decision To Give No Significant Weight To The Treating Physician And Significant Weight To The Non-Treating Physicians

Garrett first objects to Judge Hart's conclusion that the ALJ had adequately explained his reasons for rejecting the opinion of Garrett's treating physician, Dr. Tushar Sarker, while granting substantial weight to the opinions of Dr. Peter McCusker and Dr. Aroon Suansilppongse.[2] Obj. at 1-2.  We find that the ALJ adequately explained his reasons for rejecting Dr. Sarker's opinion, and that his decision to grant greater weight to the opinions of Dr. McCusker and Dr. Suansilppongse was supported by substantial evidence, and thus we will overrule Garrett's objection.

To be sure, our Court of Appeals has stated that conferring great weight to the reports of treating physicians is "a cardinal principle guiding disability eligibility determinations." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000).  This principle is especially true when the treating physician's opinion "reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." Rocco v. Heckler, 826 F. 2d 1348, 1350 (3d Cir. 1987).  The opinions of a disability claimant's treating physician are entitled to "substantial and at times even controlling weight." Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001).  When the treating physician's opinion on the severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the SSA] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2).  The Social Security Administration directs ALJs to give greater weight to a treating source's opinion than that of a non-treating source

---

[2] We do not take lightly the fact that the two physicians whose opinions the ALJ afforded substantial weight examined Garrett no more than one time, while Dr. Sanker treated Garrett over the course of many years.  But our job is not to endorse the ALJ's decision but instead to determine whether said decision provides an adequate explanation for its reasoning and is supported by substantial evidence.

when, "[a]ll things being equal…a treating source has been studying the claimant long enough to give a detailed longitudinal picture of the claimed impairment(s)." Standards for Consultative Examinations and Existing Medical Evidence, 59 Fed. Reg. No. 148 pg. 36936 (Dep't of Health and Human Serv. Aug. 1, 1991).

An ALJ, however, may reject or give less weight to a treating physician's opinion on the basis of contradictory medical evidence, and can afford that opinion "more or less weight depending upon the extent to which supporting explanations are provided." Plummer, 186 F.3d at 429. Our Court of Appeals has noted that when "the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit," Morales, 225 F.3d at 317, so long as he does not reject evidence "for no reason or the wrong reason." Plummer, 186 F.2d at 429. Our colleague Judge Rufe has also held that the rejection of a treating physician's opinion is justified where records lacked objective data or contained a credibility determination inconsistent with the ALJ's. Thompson v. Barnhart, 382 F. Supp. 2d 740, 747 (E.D. Pa. 2005). There, the Court accepted the ALJ's reasons for rejecting the treating physician's opinion after it found that the medical records did not support a complete inability to work and that the plaintiff's subjective complaints of pain and functional limitations were not credible. Id.

Here, the record shows that Dr. Tushar Sarker treated Garrett from May 6, 2009 until at least April 13, 2013. Record at 312, 362. On December 2, 2011, Dr. Sarker wrote that Garrett had increased symptoms of anxiety and depression. Id. at 274. On February 14, 2012, Dr. Sarker changed his diagnosis of Garrett to "MDD/panic D/O," or Major Depressive Disorder and Panic Disorder. Id. at 272. While in March of 2012 Dr. Sarker wrote that Garrett was "Stable but depressed," id., he noted in May of that year that Garrett was "More depressed" and had

5

experienced increased crying spells.  Id. at 271.  Between May of 2012 and April of 2013, Dr.

Sarker saw Garrett on a monthly or bi-monthly basis, and his notes stated that Garrett was for the

most part "Stable" during that time, albeit with several reported increases in anxiety and crying

spells scattered throughout the ten appointments.  Id. at 362-373.  On March 14, 2013, Dr. Sarker

wrote that Garrett was "Slowly improving," but was nonetheless unable to do a competitive job.

Id.  at 363.  The ALJ recounted these notes, and more from the record, at length in his decision. [3]

Id. at 16-22.

The ALJ also wrote in great length about Garrett's testimony during her hearing.  Garrett

testified to having a driver's license but that she only drove once or twice a month for short

distances.  Id. at 19.   Garrett further described her typical day as laying down and watching

television while occasionally getting up to get something to eat.  Id.  She also said that she at

times helps her son with his homework and does laundry, but only showers once a week and

cooks microwave meals.  Id.  Garrett said she has no hobbies and does not go to church, and

either a friend or her grandmother stops by to check on her.  Id.

The ALJ then stated that Dr. Sarker believed Garrett was unable to work due to her

mental impairments. Id. at 22.  Dr. Sarker estimated that Garrett would miss four or more days of

work each month and would perform a job less than 50% as efficiently as a normal worker.  Id.

at 379.  Dr. Sarker further noted that Garrett would be "off task" more than 30% of the time

during an eight-hour per day, five days a week job.  Id. at 378.  By contrast, the ALJ concluded

that "[n]o significant weight is accorded to Dr. Sarker's assessment as it is not consistent with

---

[3] For example, the ALJ noted the many changes in Garrett's medication over the relevant
time period, side effects of her medication, and major life events such as her marriage and
conflicts with her mother.  See Record at 16-17 and 19-20.

the routine mental health notes of record or claimant's demonstrated activities as discussed in detail above." Id. at 22.

The ALJ provided a lengthy recounting of Dr. Sarker's medical notes during the relevant treatment period and extensively wrote regarding Garrett's testimony where she discussed her daily activities. He then decided that Dr. Sarker's opinion would be granted less weight since the ALJ did not believe Dr. Sarker's opinion to be consistent with Dr. Sarker's own medical notes or Garrett's testimony. Further, the ALJ did not find Garrett's testimony about her subjective complaints of her functional limitations to be credible. This case is thus analogous to Thompson, 382 F. Supp. 2d at 747, where the Court upheld an ALJ's nearly identical reasons for rejecting the treating physician's opinion. We therefore hold that the ALJ adequately explained his reasons for rejecting Dr. Sarker's opinion.

The ALJ instead gave great weight to the opinions of Dr. Peter McCusker, the state's medical examiner, and Dr. Aroon Suansilppongse, the state agency's psychological consultant. Dr. McCusker conducted a clinical psychological evaluation of Garrett on May 7, 2012. Record at 268. He wrote that Garrett's mood was moderately depressed and that she cried briefly and intermittently several times during the evaluation. Id. at 269. Dr. McCusker diagnosed Garrett with major depressive disorder of moderate intensity and anxiety disorder. Id. at 270. Despite Garrett's difficulties, Dr. McCusker found that she was able to understand and follow instructions and perform simple tasks. Id. He further noted that Garrett was "alert and oriented in all three spheres," and that she can perform commonplace activities of daily living skills and manage her funds. Id. Dr. McCusker therefore concluded that Garrett was capable of tolerating the stress and pressures of work within a supportive environment. Id. The ALJ also wrote extensively about Dr. McCusker's evaluation of Garrett in his decision, id. at 16-17 and 20-21,

and concluded that Dr. McCusker's opinion would be accorded significant weight "because it is generally consistent with his clinical findings and consistent with the evidence of record considered in its entirety."[4]  Id. at 21.  Dr. Suansilppongse, the state agency's psychological consultant, further reviewed the evidence on file and found that Garrett's mental impairments imposed only moderate difficulties for maintaining concentration and social functioning.  Id. at 279-281.  He therefore concluded that Garrett had the capacity for work-related activity that would likely lead to infrequent interactions with coworkers and the public.  Id. at 282.  The ALJ also accorded this assessment significant weight.  Id. at 21.

Both Drs. McCusker and Suansilppongse agreed with Garrett's treating physician that Garrett suffered from moderate to severe depression.  But both disagreed with the treating physician's assessment that Garrett was unable to work.  Their opinions were supported by Garrett's ability to perform daily life activities, understand and follow simple instructions, and complete simple, repetitive tasks.  These findings supplied more than a scintilla of evidence to support the opinion that Garrett is able to work.  We therefore find that the ALJ's decision to grant significant weight to Dr. Peter McCusker's psychological evaluation and Dr. Suansilppongse's assessment was supported by substantial evidence.

We will therefore overrule Garrett's first objection to Judge Hart's R&R.

### B.      The ALJ's Failure To Obtain Records From Garrett's Prior Period of Disability

Garrett next objects to Judge Hart's conclusion that the ALJ did not err when he refused to seek Garrett's earlier records from a prior award of benefits.  Garrett's objection states that Judge Hart incorrectly found that Garrett had waived her request for the records at her hearing

---

[4] We do agree with Garrett's point that one would hope that Dr. McCusker's opinion is consistent with his own clinical findings.  See Obj. at 6.

and that those records were not relevant to the matter at hand.  We find that Judge Hart did not

base his ruling on this issue on the notion that counsel's closing statement at Garrett's hearing

constituted a waiver.  We further find that the ALJ did not err when he failed to seek and

consider Garrett's earlier record when she was awarded benefits and will therefore overrule

Garrett's objection.

Garrett's assertion that the "Report and Recommendation treats counsel's language as a

waiver, which is not correct," see Obj. at 15, does not address the totality of Judge Hart's ruling

on this matter.  Judge Hart wrote that Garrett's claim that the ALJ erred in refusing to seek her

earlier records "lacks merit, and not only because counsel appears to have conceded at the

hearing that the records were unnecessary."  R & R at 9.  He then wrote two full paragraphs

explaining why the previous records were not relevant to the case.  Id.  Garrett's contention that

Judge Hart treated counsel's language at the hearing as a waiver is at best incomplete, and any

contention that Judge Hart based his decision on this issue solely on the concept of waiver misses

the mark.

We need not, however, overly concern ourselves about whether Garrett waived her

request to have the ALJ seek previous records since we find that these records are irrelevant to

the current claim.  Garrett cites Social Security's Hearings, Appeals, and Litigation Law Manual

(HALLEX), which states that the "administrative law judge (ALJ) will admit into the record any

evidence he or she determines is material to the issues in the case," HALLEX I-2-6-58 (June 9,

2014).   She further asserts that the records were necessary to provide the ALJ with a

longitudinal history of her medical condition.  See Obj. at 15-17.

We disagree with this assertion. Garrett previously received disability benefits from 1997

to 2011.  Id. at 173-74.  Her benefits were terminated in October of 2011 after her condition

9

improved.  Id. at 176.  She had three separate jobs between 2005 and 2011 working as a cardiac

technician, client relations specialist, and secretary.  Id. at 213.  She then filed for the benefits at

issue here in 2013.  Id. at 161.  There is no need for the longitudinal history of her anxiety order,

as the only relevant period for this matter began at the time when Garrett claims she could no

longer work, since she admits that she was able to work for several years before the alleged

second onset of her disability in 2011.  The record was fully developed regarding Garrett's

condition during the time at issue here, and thus the ALJ did not need the medical records from

Garrett's previous award of benefits to make his determination.  The fact that Garrett could not

work over a decade ago has no relevance to her current benefits claim.  We find that the ALJ did

not err when it failed to seek and consider Garrett's previous records and therefore will overrule

Garrett's second objection to Judge Hart's R&R.

### C.        The ALJ's Decision To Discount Garrett's Grandmother's Lay Testimony

Garrett also objects to Judge Hart's discussion of the ALJ's decision to discount the lay

testimony of Garrett's grandmother, Beatrice Lee.  Garrett states that Judge Hart "incorrectly

assumes that there is a requirement of medical verification for lay testimony."  Obj. at 17.  We

regard this as a tortured and incomplete reading of Judge Hart's R&R,[5] but we review the ALJ's

discussion of Lee's testimony and the record de novo to determine whether the ALJ's decision to

discount Lee's testimony was supported by substantial evidence.

We find that the ALJ's decision to discount Lee's testimony was supported by substantial

evidence.  The ALJ wrote that "[a]lthough Ms. Lee testified to an incident at IKEA wherein she

---

[5] Judge Hart wrote in his R&R that Garrett never discussed during any medical
appointment the alleged IKEA panic attack which her grandmother testified to.  R&R at 11.
Garrett even said to Dr. McCusker that she does not like going out shopping because of "low
energy."  Record at 269.  This would have been an eminently relevant time to discuss the alleged
panic attacks Garrett had in IKEA and K-Mart.

reportedly witnessed claimant having a panic attack, there is no documentation of such incident to substantiate its validity." Record at 20. Garrett characterizes the ALJ's decision as "endors[ing] [a] non-existent medical verification requirement [for] lay testimony." Obj. at 18. We disagree. The ALJ noted that Garrett did not discuss this panic attack in her testimony at the hearing nor did her medical records document her mentioning this panic attack to any doctor. Record at 20. A major panic attack as Lee described it would seem like something that Garrett would discuss in detail with a medical health professional, and therefore the ALJ had to make a credibility decision regarding her testimony. The ALJ did not, as Garrett now states, require medical verification for Lee's lay testimony.

We find that the ALJ did not err when he discounted Lee's testimony and will therefore overrule Garrett's third objection to Judge Hart's R&R.

### D.   The ALJ's Reliance On Garrett's Life Activities To Discount the Opinion of the Treating Physician

Garrett lastly objects to what she describes as Judge Hart's error in endorsing the ALJ's reliance on Garrett's testimony as to her daily life activities when refuting the treating psychiatrist's opinion regarding Garrett's ability to work. Obj. at 19. We find that the ALJ did not improperly rely on such testimony when choosing not to grant significant weight to the opinion of Garrett's treating physician.

As we discussed earlier, the ALJ described in detail his reasons for rejecting Dr. Sarker's opinion that Garrett was unfit to work. For the benefit of the parties, we will again rehearse our analysis. The ALJ wrote in his decision that "[n]o significant weight is accorded to Dr. Sarker's assessment as it is not consistent with the routine mental health notes of record or claimant's demonstrated activities…." Record at 22. The record shows that Dr. Sarker treated Garrett from

11

2009 to 2013.  During that period, Garrett had bouts where she suffered from increased

symptoms of anxiety but was, in Dr. Sarker's own words, "stable" at most times during those

five years.  Id. at 272-275, 362-373.  Garrett's testimony also indicated that, while she was

certainly suffering from depression and anxiety, she was able to help her son with homework,

drive a car, get married (though she was separated at the time of the hearing), do laundry, and

occasionally meet with friends.  Id. at 16-22, 269.[6]  The ALJ further had the opinions of two

other physicians, Dr. McCusker and Dr. Suansilppongse, to consider when making his

determination.  Both Dr. McCusker and Dr. Suansilppongse thought that Garrett was able to

work, and the ALJ decided that their opinions were better supported by the evidence on record.

Id. at 270, 282.  Garrett's life activities were not the sole factor the ALJ used when granting no

significant weight to Dr. Sarker's opinion that Garrett could not work.

     We find that the ALJ did not erroneously rely on Garrett's daily life activities when

discounting the opinion of her treating physician, and we will therefore Garrett's fourth and final

objection to Judge Hart's R&R.

## V.     Conclusion

     Our de novo review of the record reveals that Garrett's objections to Judge Hart's R&R

have no merit.  We will therefore overrule her objections, approve and adopt Judge Hart's R&R

that Garrett's Request for Review be denied, and grant judgment in favor of the Acting

Commissioner and against Garrett.

BY THE COURT:

  /s/ Stewart Dalzell, J.

---

[6] Garrett told Dr. McCusker that her girlfriends occasionally come over to her house and watch TV and talk with her.